STIGALL *et al. v.* SHARKEY COUNTY.

(In Banc. Jan. 22, 1945.)

[20 So. (2d) 664. No. 35744.]

**John B. Gee** and **Clements & Clements,** all of Rolling Fork, for appellants.

Fielding L. Wright, of Rolling Fork, Brunini & Brunini, of Vicksburg, and John S. Joor, of Rolling Fork, for appellee.

Smith, J., delivered the opinion of the court.

The original bill in this case was filed by James M. Stigall and wife, and L. M. Elliott and his wife, separate owners of certain described farm lands in the Otter Bayou Drainage District of Sharkey County, and W. R. Corley, a partner with Mr. Elliott in operation of his farm. The bill was filed against Sharkey County on the complaint that the said county, through its board of supervisors, built a public road not on the "spoil bank" of certain lateral ditches in the said drainage system, but built it in and on lateral Canal No. 2 for its complete length. It is further alleged that over lateral Canal No. 3 the Stigalls had build a suspension bridge for convenience in getting to and from their property on both the north and south sides of the canal, which bridge, it is alleged, the defendant county took out and substituted for it a dirt fill in the canal, through which were inserted two 48-inch culverts. The road was built in the fall of 1939 and the winter and spring of 1940, and filled one lateral completely, and lateral No. 3 for about two thirds of its length. Complainants below, appellants here, charge in their bill of complaint, in which all of them join, that because of the faulty construction of the road built through the drainage district and their lands, the defendant county unlawfully obstructed the drainage system without providing adequate drainage in lieu thereof.

As a result it is charged that the water, under existing conditions, which formerly drained off of said lands in twenty-four hours (even in hard rains), remained on the land from three to six days, due to the obstruction placed by defendant county in Canal No. 3. That because of the change in the drainage efficiency brought about by the wrongful construction of this road, water had to "pond" upon the lands which the lateral No. 2 was supposed to

drain, but could not drain because of the small size of the said culverts.

Appellants aver the lands were duly assessed for benefits, and have continuously been taxed to raise revenue with which to retire the bonds of the district and maintain the facilities thereof, whereas they now receive only about one-third benefit from lateral No. 3 and no benefit whatever from lateral No. 2.

The appellants cultivated their respective lands and made good crops thereon in 1939; and attempted, they say, to cultivate the same during the years, 1940, 1941, and 1942, but they allege that by the claimed unlawful construction of said road and interference with the efficiency of the drainage system, as set out supra, they suffered the loss of their crops in large amounts.

Before filing their bill of complaint the appellants had filed their several claims for damages, for the loss of their respective crops, against the county for large sums, which the bill alleges were disallowed by the county, and these claims are filed as separate exhibits to the original bill.

The prayer of the bill is that a mandatory injunction be granted requiring the defendant below, appellee here, to take out the alleged obstructions placed in Canal No. 3 in the construction of the public road about which complaint is made, and to restore the canal to its original state, and to replace the bridge removed and to restore the lateral draining ditch extending through Section 34 from lateral Canal No. 2 to its original state. Or, in the alternative, that the county be required to make equal and sufficient drains. Prayer was also made that damages be granted to each of the complainants in accordance with their respective and different claims filed with the original bill as exhibits, which claims were for loss of crops for the years, 1940, 1941, and 1942.

To this bill the defendant county, appellee here, filed a demurrer based on four grounds: namely, (1) that the court in vacation has no jurisdiction to issue a mandatory injunction; (2) that the Court has no jurisdiction of this

cause as there is a misjoinder of parties and a misjoinder of the causes of action; (3) that there is no equity on the face of the bill of complaint; (4) for reasons to be stated at the hearing.

It will be noted that this demurrer is partly special and partly general, and while the rule is that, under such circumstances, the demurrer will be overruled if there is any equity on the face of the bill without regard to whether or not there is merit in the special demurrer portion of the whole demurrer, and while we are of the opinion that there is equity on the face of the bill, we will, due to the importance of the issue inherent in it, discuss briefly the second ground of this demurrer. Obviously, there is no merit whatever in the first ground of the demurrer. Section 1657, Code 1942.

The second ground is that the court has no jurisdiction of this cause "as there is a misjoinder of parties and a misjoinder of the causes of action." This part of the bill, in effect, charges it to be multifarious.

We do not think the bill is multifarious. Section 1307, Code 1942, contains this provision: "But the uniting in one bill of several distinct and unconnected matters of equity against the same defendant shall not be an objection to the bill."

In this cause all complaints have a common complaint against a single offender as a result of an identical wrong, as to which each complainant could have sued separately in equity, that is, the prayer for a mandatory injunction to rectify the bad drainage conditions resulting from the action of the county in obstructing drainage of the lands of the complainants by the allegedly unlawful and faulty construction of a public road. The securing of this mandatory injunction is the paramount and dominant purpose of the bill. The union of the parties in one complaint and prayer for the injunction also avoided a multiplicity of suits. So, we say that there is equity on the face of the bill. Letts et al. v. Hancock Bank of Gulfport, 195 Miss. 519, 15 So. (2d) 422.

Pascagoula Boom Co. v. Dixon et al., 77 Miss. 587, 28 So. 724, 78 Am. St. Rep. 537; Canton Cotton Warehouse Co. v. Potts, 69 Miss. 31, 10 So. 448; Cumberland Tel. & Tel. Co. v. Williamson; 101 Miss. 1, 57 So. 559; Illinois Cent. R. Co. v. Garrison, 81 Miss. 257, 32 So. 996, 95 Am. St. Rep. 469.

However, the learned court below sustained the demurrer and dismissed the bill, and from this decree the appeal was taken.

We do not think the bill is multifarious.

Here there is a common right and a community of interest in the subject matter as to the application for the injunction, in that, all complainants were injuriously affected as a result of the same act of the common defendant, and all are in a like condition as a result thereof because the drainage system served all of them, and its impairment was disastrous similarly to all.

The respective complainants filed in connection with the single bill of complaint their several accounts for damages to each of their individual crops on separately owned or operated farm land involved, and asked for judgments in favor of each for the various sums of damage claimed. There was no mutuality or community of interest among them as to all of this damage done, and thus separately sought. And it is argued that this is multifarious. We do not think so.

Both sides cite a number of cases, but we think the case is controlled by the cases discussed hereinafter, especially Tribette v. Illinois Railroad Co., 70 Miss. 182, 12 So. 32, 19 L. R. A. 660, 35 Am. St. Rep. 642; Illinois Cent. R. Co. v. Garrison, 81 Miss. 257, 32 So. 996, 95 Am. St. Rep. 469; and Yazoo & M. V. R. Co. v. McConnell, 127 Miss. 581, 90 So. 321; Cumberland Telephone & Telegraph Co. v. Williamson, 101 Miss. 1, 57 So. 559.

We will proceed first to discuss the cases of Tribette v. Illinois Railroad Co., supra, and Illinois Cent. R. Co. v. Garrison, supra. In the Tribette case the damage "resulted from a single past trespass, completed and over

with; hence not to occur again in the future." In the case at bar the trespass will continue unless stopped and rectified. In the Garrison case this Court said: "The Tribette case holds that the jurisdiction is not exercisable, as maintained by Mr. Pomeroy, where the community of interest consists merely in the fact that the same question of law and similar questions of fact are involved in the several cases. We do not rest the exercise of the jurisdiction here on that proposition, but on the express holding in the Tribette case that the jurisdiction exists when there is 'a common right or title', or 'a community of interest in the subject-matter of controversy.' We hold that the jurisdiction is maintainable in this case for the following reasons: First. This is not the case of a single past trespass, over with when it occurred, for all time, as was the Tribette case." [81 Miss. 257, 32 So. 997.]

However, the nearest approach to the action and condition of the case under consideration cited to us is the case of Yazoo & M. V. R. Co. v. McConnell et al., 127 Miss. 581, 90 So. 321, 322. In that case the complainants were separate landowners along a railroad right of way; when erected the right of way was so drained as adequately to protect farms alongside, but later the railroad company constructed dumps or levees across the barrow pits in its drainage system, which caused the water to "pond" on the several tracts of the different complainants, and damaging them in differing degrees individually. The prayer was that the railroad be required to provide adequate drainage to all complainants and to pay each complainant the damages which each separately claimed to have sustained. There were general and special demurrers, on the ground of multifariousness. The Court said: "The gravamen of the bill, however, is that the erection and maintenance of each and every one of these levees interferes with the natural drainage of the lands of each and every one of the complainants. The equitable relief sought by the bill is the abatement of this

nuisance. It is not a suit solely for damages for the injury, but one asking for equitable relief, viz. the abatement of a nuisance common to each complainant. The maintaining of this bill comes squarely within the rule announced in Tribette v. Illinois Cent. Railroad Co., 70 Miss. 182, 12 So. 32, 19 L. R. A. 660, 35 Am. St. Rep. 642. . . . Since the chancery court has jurisdiction in this case, it will, of course, be proper to grant full and complete relief to each complainant. The lower court erred in holding that the bill is multifarious and ordering each complainant to file a separate bill. Both demurrers should have been overruled.''

Several other questions and issues were raised in the briefs before this Court, but we are adjudicating nothing whatever in the case except the grounds of the demurrer and the subjects embraced in this decree.

Since we have reached the conclusion that the court had jurisdiction to hear in vacation the application for a mandatory injunction, and that the bill is not multifarious, and has equity in it, it necessarily follows that the chancellor, in our judgment, erred in sustaining the demurrer, which should have been overruled. Therefore, the cause must be reversed and remanded for further proceedings in accordance with this opinion.

Reversed and remanded.