KITCHENS, Justice,
concurring in part and dissenting in part:
¶ 55. I agree with my colleagues in the plurality that the chancellor correctly con- *872 eluded , that she was without authority to divide the wrongful death settlement proceeds unequally. I write separately to express my disagreement with the line of cases which allows for a proportional division of damages for loss of society and companionship among wrongful death beneficiaries.
¶ 56. The wrongful death statute, Mississippi Code Section 11-7-13, provides, in pertinent part:
Damages for the injury and death of a married man shall be equally distributed to his wife and children, and if he has no-children all shall go to his wife; damages for the injury and death of a married woman shall be equally distributed to the husband and children, and if she has no children all shall go to the husband; and if the deceased has no husband or wife, the damages shall be equally distributed to the children; if the deceased has no husband, nor wife, nor children, the damages shall be distributed equally to the father, mother, brothers and sisters, or such of them as the deceased may have living at his or her death.
Miss.Code Ann. § 11-7-13 (Rev. 2004) (emphasis added). “There shall not be, in any case, a distinction between the kindred of the whole and half blood of equal degree.” Miss.Code Ann. § 11-7-13. The language mandating equal distribution of wrongful death damages first appeared in Section 721 of the Mississippi Code of 1906, having been approved to amend chapter 663 of the Mississippi Code of 1892 on March 23, 1896. Act of Mar. 23, 1896, ch. 86 § 3, 1896 Miss. Laws. See Act of Jan. 27, 1898, ch. 65 § 3, 1898 Miss. Laws'. Now Mississippi Code Section 11-7-Í3, this provision consistently has been reaffirmed by the legislature, most recently during the 2014 legislative session. See Miss.Code Ann. § 11-7-13 (Supp.2014).
, ¶ 57. This -Court long has held that, “[o]n appellate review, we strictly construe Mississippi’s wrongful death statute.” Pannell v. Guess, 671 So.2d 1310, 1313 (Miss.1996) (citing Smith v. Garrett, 287 So.2d 258, 260 (Miss.1973) (“... the wrongful death statute created a cause of action unknown to the common law, and must be strictly construed.”) (citing Logan v. Durham, 231 Miss. 232, 95 So.2d 227 (1957))). The statute allows for the consideration of “all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit.”- Miss.Code Ann. § 11-7-13 (Rev. 2004). This Court has interpreted the language of Section 11-7-13 to include “(1) the present net cash value of the life expectancy of the deceased, (2) the loss of the companionship and society of the decedent, (3) the pain and suffering of the decedent between the time of injury and death, and (4) punitive damages.” McGowan v. Wright, 524 So.2d 308, 311 (Miss.1988) (emphasis added) (citing Jesco, Inc. v. Whitehead, 451 So.2d 706, 710 (Miss.1984); Sheffield v. Sheffield, 405 So.2d 1314, 1318 (Miss.1981); Dickey v. Parham, 331 So.2d 917, 918-19 (Miss.1976); Thornton v. Ins. Co. of North Am., 287 So.2d 262, 265 (Miss.1973); Scott v. K-B Photo Service, Inc., 260 So.2d 842, 844 (Miss.1972); Boyd Constr. Co. v. Bilbro, 210 So.2d 637, 643 (Miss.1968)).
'¶ 58. In Pannell, this Court held that “the wrongful death statute does not provide that the'lower court may conduct a hearing to determine how to divide the proceeds. In fact, the statute provides that the funds ‘shall be equally distribut-éd.’” Pannell, 671 So.2d at 1314. The Court continued: “under Miss.Code Ann. § 11-7-13 (Supp.1991), the chancellor had no choice but to distribute the insurance settlement proceeds ... equally.” Id. As such, the Court declined' to find erroneous *873 “the chancellor’s refusal'to hold a separate hearing in which each wrongful death-beneficiary could attempt to prove his or- her individual damages (and.. therefore, the right to receive a larger or smaller portion of the insurance proceeds)....” Id.[34]
¶59.- Nevertheless, in- 2004, this Court departed from its prior interpretation of the wrongful death statute and held that, “because wé find provisions of the Statute which are not in accord with this opinion to be ‘an impingement upon the constitution,’ ... where provisions of this opinion conflict with the Statute, the provisions herein shall control.” Long v. McKinney, 897 So.2d 160, 164 (Miss.2004). According to the Long Court, “in wrongful death litigation, there are several kinds of damagés which may be pursued, and these damages are not due to the same claimants.” Id. at 169. The Court continued: “[t]he beneficiaries are entitled to recover for their respective claims of loss of society and companionship” and “[t]he wrongful death beneficiaries are entitled to recover the present net ,£ash value of the decedent’s continued existence.” Id. (emphasis added). Ostensibly, the Long Court found the equal distribution of loss of society and companionship damages to be constitutionally odious. However, no analysis of the constitutionality of the division of wrongful death proceeds in this specific context can be found in Long.
¶ 60. Three years later, this Court considered whether the defendant was entitled to a judgment notwithstanding the verdict in a case in which the plaintiff had failed to prove any damages for loss of society and companionship. River Region Med. Corp. v. Patterson, 975 So.2d 205 (Miss.2007). After the decedent had died during childbirth, her husband and two daughters filed a wrongful death action against River Region, where the decedent had been hospitalized. Id. at 206. Plaiii-tiffs sought damages only for loss of society and companionship, and the jury awarded them $1,710,000. Id. Following the Warren County Circuit Court’s denial of defendant’s motion for judgment notwithstanding the verdict, defendant appealed. Id. The daughters settled their claims with the defendant the next year, leaving only the widower’s claims before this Court on appeal. Id.
¶61. This Court cited Long for the proposition that “[t]he beneficiaries are entitled to recover for their respective claims of loss of society and companionship.” Id. at 208 (quoting Long, 897 So.2d at 169) (emphasis in Patterson). “Assuming Thomas Patterson was a legitimate wrongful-death beneficiary, as we must do in giving him all reasonable inferences,” this Court opined, “he would then be entitled to recover for himself any loss of society and companionship he might prove, and to share equally in the damages which might have been recovered by Ms. Nettles [the decedent], ‘had death not ensued.’ ” Id. at 208 (quoting Miss.Code Ann. § 11-7-13 (Rev. 2004)). . The Court held that, because- “Patterson presented no evidence regarding any damages sustained from loss of society and companionship,” the defendant “was entitled to judgment notwithstanding the verdict as to Patterson’s claim.” Id. at 208.
¶ 62. Justice Graves dissented, reasoning that “Section 11-7-13 does'not contain any language as used by the majority that ‘beneficiaries' are entitled to recover for their respective claims of loss of society *874 and companionship.’ ” Patterson, 975 So.2d at 210 (Graves, J., dissenting). He pointed out that, though “[a]n equal distribution of such damages may seem unfair,” a “strict construction of the statute would lead one to conclude that there would be no need for Patterson to prove individual damages for loss of society and companionship.” Id. I agree with Justice Graves’s analysis.[35]
¶ 63. Permitting unequal distribution of damages for loss of society and companionship “individual to each beneficiary” tends to foster situations reminiscent of a comedy routine often performed by the Smothers Brothers: “Mom always liked you best.” Under the Long and Patterson cases, wrongful death beneficiaries — siblings and/or half siblings — can be thrown into courtroom competition with each other in petty, rivalrous efforts to prove which survivor most loved and/or was loved by the decedent.
¶ 64. It is true, as my learned colleague Justice King notes, that the Mississippi Constitution vests our chancery courts with jurisdiction of “[a]ll matters in equity,” “[m]atters testamentary and of administration,” and “[m]inor’s business.” Miss. Const, art. 6, § 159. And it is true that “the chancery court clearly had jurisdiction over approving and dividing the settlement at issue.” King Op. ¶ 70. But Justice King concludes that, “in limited circumstances such as the case before us today,” the chancery court has “the power to consider and divide the damages for loss of society and companionship unequally.” King Op. ¶ 70. However, none of the cases cited by Justice King stands for this proposition. See Derr Plantation, Inc. v. Swarek, 14 So.3d 711, 716 (Miss.2009) (chancery court vested with jurisdiction of specific performance of a real estate contract); McClendon v. Miss. State Highway Comm’n, 205 Miss. 71, 38 So.2d 325, 327 (1949) (where equity jurisdiction attaches by the chancery court’s “having taken jurisdiction on any one ground of equity,” chancery court “will thereupon proceed in the one suit to a complete adjudication and settlement of every one of all the several disputed questions materially involved in the entire transaction.... ”); Ill. Cent. R. Co. v. Nelson, 245 Miss. 395, 401, 146 So.2d 69 (1962) (chancery court exercised jurisdiction of and awarded damages in wrongful death action “because of attachment features of the case.”).
¶ 65. Mississippi Code Section 11-7-13 mandates the equal distribution of damages relating to loss of society and companionship in a wrongful death action. This has been the law of Mississippi for more than a century. But ten years ago, with the advent of Long, this Court implicitly determined that equal distribution in this context is unconstitutional, in the complete absence of any analysis of its perceived constitutional infirmity.
¶ 66. The plurality takes the position that the Long Court “did no more than interpret the statute as allowing individuals with claims for loss of society and companionship to recover those damages individually.” PI. Op. ¶ 38. With respect, that is much more than a mere interpreta *875 tion of Section 11-7-13, which mandates that “the damages shall be distributed equally_” Miss.Code Ann. § 11-7-13. And, more importantly, the interpretation differed from Parnell, which had held that because the decedent “was not survived by á husband or children,” under Mississippi Code Section 11-7-13, “the chancellor had no, choice but to distribute the insurance settlement proceeds to [the decedent’s] father, mother, half-sisters and half-brother, equally.” Pannell, 671 So.2d at 1314. The Court rejected the argument that the wrongful death statute permits the lower court to “conduct a hearing to determine how to divide the proceeds.” Id.
¶ 67. With regard to the issue of the award of attorney fees, while Presiding Justice Dickinson articulates some valid points with regard to Attorneys Kiyhet’s and Castigliola’s having actively litigated against Dane Eubanks’s half-siblings, David Eubanks, Jr., and Allison Eubanks, I agree with Justice King that these two lawyers did, in fact, work to maximize the monetary amount of the settlement for its ultimate beneficiaries, which included David Eubanks, Jr., and Allison Eubanks. I agree with Justice King that this case ought to be reversed and remanded for a deduction only of the legal costs incurred post-settlement, during which time Attorneys Kiyhet and Castigliola acted adversely to Dane’s half siblings by seeking exclusion of them from the settlement award.
¶ 68. The legal landscape of Long and its progeny entitles wrongful death beneficiaries to recover damages for loss of society and companionship which they may prove. See Patterson, 975 So.2d at 208. I would not have departed from the sensible and well-settled law and practice as articulated by this Court in Pannell, that wrongful death proceeds, whatever the nature of such damages, must be divided equally among all wrongful death beneficiaries.

. It was on the basis of Pannett that the Court of Appeals in the present case affirmed "the chancellor’s judgment ordering that the settlement proceeds should be divided equally arñong the wrongful death beneficiaries.” Estate of Eubanks v. Eubanks, 197 So.3d 878, 893, 2014 WL 211730, *14 (citing Pannell, 671 So.2d at 1314).

. Presiding Justice Dickinson presents his interpretation of Long by way of analogy, stating that "Justice Kitchens interprets Section 11-7-13 to require that the wayward son who cared nothing for his father, receive half the money the jury awarded the man's wife for her individual loss of society, companionship, and consortium," Pi. Op. ¶ 32, I agree that such a result may seem unfair, but echo Justice Graves’s dissent in Patterson: if the statute is strictly construed, the wayward son would not need to prove individual damages for loss of society and companionship. See Patterson, 975 So.2d at 210 (Graves, J,, dissenting).